UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BENJAMIN KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 2:14-cv-0070-WTL-DKL |
| ) | |
| DEPAUW UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

**DEPAUW'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S VERIFIED MOTION FOR PRELIMINARY INJUNCTION**

Defendant, DePauw University ("DePauw"), by counsel, opposes Plaintiff's Verified Motion for Preliminary Injunction, for the reasons set forth below.

**INTRODUCTION**

Despite Plaintiff's litany of alleged shortcomings in DePauw's investigation and hearing procedures, which DePauw disputes, Plaintiff has not come close to demonstrating a likelihood of success on the merits on his Title IX claims or his state law claims and does not show the existence of irreparable injury to support such an order.  The basic facts concerning the admitted sexual encounter between Plaintiff and J.B. are consistent with other cases involving sexual misconduct allegations on any college campus.  There is usually too much alcohol involved and the question is whether the complainant consented to the sexual encounter.  The determination on this issue is reached by weighing conflicting testimony and making credibility assessments.

Plaintiff complains that he was falsely accused and found responsible for conduct he contends was consensual.  He complains about delay, about how DePauw conducted its investigation, about the way in which the disciplinary hearing was conducted and about the severity of the sanction ultimately imposed after appeal.  These allegations do not set forth facts

showing that he is likely to succeed on the merits, because under Title IX, the question is whether DePauw's processing of the sexual misconduct charge discriminated against Plaintiff on the basis of his sex. There is no showing that the investigation and hearing processes were tainted by any specific indication of gender bias to warrant the entry of a preliminary injunction. The breach of contract claim similarly will not support preliminary injunctive relief because Plaintiff cannot meet his burden to prove that DePauw acted arbitrarily or in bad faith. The law does not require DePauw to run a flawless investigation or conduct a perfect hearing. DePauw is required to be fair and balanced and it is entitled to deference in the handling of internal matters such as these. Because DePauw met the duty of substantive compliance with its disciplinary procedures, DePauw's final determination should not be disturbed, and there is not a showing that supports the issuance of a preliminary injunction.

As demonstrated in the Affidavit of Cindy Babington, Vice President for Student Life and Dean of Students, filed herewith ("Babington Aff."), DePauw investigated the charge made by J.B., recommended qualified advisors but allowed the parties to use advisors of their choice during the hearing, held a hearing conducted by individuals who have received training by outside consultants, resolved conflicting testimony, issued a decision, processed an appeal and issued a modified decision after appeal. To be sure, the investigation and finding of responsibility are actions Plaintiff does not agree with, but again, the question before the Court is not whether DePauw made the correct determination; it is whether, in conducting its investigation and deciding the conflicting facts, DePauw violated Title IX by discriminating against Plaintiff on the basis of his sex, or breached its contract with Plaintiff or damaged Plaintiff under one of the other state law theories in the Complaint.

What is missing from Plaintiff's presentation is a discussion of the obligation DePauw has under Title IX to all students, and particularly to students who complain about sexual misconduct. DePauw has obligations to attempt to remove the fear a victim feels when a person found responsible for sexual misconduct remains on campus, to address any hostile environment created by the situation, and to prevent reoccurrence of similar events in the future.

DePauw does not dispute that Plaintiff will be harmed somewhat by his suspension, but Plaintiff has not demonstrated any irreparable harm that is more than speculative and largely within his control. Assuming DePauw's decision stands, DePauw is refunding Plaintiff's tuition for this semester, so there is little financial harm, and if there is any financial harm from an erroneous suspension, Plaintiff has an adequate remedy at law. In contrast, the harm to DePauw from an erroneous injunction is to require it to permit someone who has been found responsible for sexual misconduct to be on its campus as if nothing happened – divesting DePauw of its authority to make determinations for the well-being of its student body and impacting DePauw's ability to comply with its Title IX obligations to all students.

## ARGUMENT

Plaintiff asks this Court to regulate DePauw's internal affairs—an action which DePauw submits would be an unwarranted imposition into the academic freedom of a university. Academic freedom "is not just the freedom of teachers, school authorities [and students] to express ideas and opinions. It includes the authority of the university to manage an academic community . . . free from interference by . . . the courts." *Brandt v. Bd. of Educ.*, 480 F.3d 460, 467 (7th Cir. 2007). As Judge Posner observed, "one component of academic freedom is the right of schools to a degree of autonomy in the management of their internal affairs." *Doe v. St. Francis School District*, 649 F.3d 869, 873 (7th Cir. 2012). Similarly, District Judge

3

Conlon observed that a "private university may prescribe the moral, ethical and academic standards that its students must observe; it is not the court's function to decide whether student misbehavior should be punished or to select the appropriate punishment for transgressions of an educational institution's ethical or academic standards." *Holert v. Univ. of Chicago*, 751 F. Supp. 1294, 1301 (N.D. Ill. 1990). Accordingly, in his *St. Francis* opinion, Judge Posner cautioned, "[j]udges must be sensitive to the effect on education of heavy-handed judicial intrusion into school disciplinary issues, or heavy-handed administrative intrusion required by judges interpreting Title IX and other statutes that . . . have made education one of the most heavily regulated American industries." *Id.*

As discussed below, Plaintiff has not demonstrated a likelihood of success, and consistent with the goal of protecting DePauw's academic freedom, this Court should resist Plaintiff's request to preliminarily enjoin DePauw and allow a student found responsible for sexual misconduct to continue to attend class while the merits of his case are resolved.

**I.    PRELIMINARY INJUNCTION STANDARD**

"A preliminary injunction 'is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" *Silver Streak Indus., LLC v. Squire Boone Caverns, Inc.*, No. 4:13-cv-00173, RLY-DML, 2014 U.S. Dist. LEXIS 7015, at *6 (S.D. Ind. Jan. 21, 2014) (Young, J.).  To obtain preliminary injunctive relief, the moving party must demonstrate that he or she has a reasonable likelihood of success on the merits, lacks an adequate remedy at law, and will suffer irreparable harm if immediate relief is not granted. *Id.* "Under the threshold phase for preliminary injunctive relief, a plaintiff must establish — and has the ultimate burden of proving by a preponderance of the evidence," the first three elements. *Id. See*

4

*also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1085-86 (7th Cir. 2008).

> **If the court determines that the moving party has failed to demonstrate any one of these threshold requirements, it must deny the injunction.** If, on the other hand, the court determines the moving party has satisfied the threshold phase, the court then proceeds to the balancing phase of the analysis. The balancing phase requires the court to balance the harm to the moving party if the injunction is denied against the harm to the nonmoving party if the injunction is granted.

*Silver Streak* at \*6-\*7 (emphasis added).

In the balancing phase, the Court should "take into account all four of these factors and then exercise[s] its discretion to arrive at a decision 'based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case.'" *Logansport Mach. Co. v. Neidlein-Spannzeuge GmbH*, 2012 U.S. Dist. LEXIS 71014, at \*19 (N.D. Ind. May 22, 2012) (DeGuilio, J.). The Court should employ a "sliding scale" approach, balancing the degree of likelihood of success on the merits against the irreparable harm that will occur if immediate relief is not granted. Thus, "the more likely the moving party will succeed on the merits, the less the element of irreparable harm must weigh in its favor. Similarly, the less likely that the party seeking the preliminary relief will have success on the merits, the greater the element of irreparable harm required to weigh the balance in its favor." *Sanders v. Osburn*, No. 3:12-CV-442, 2012 U.S. Dist. LEXIS 121118, at \*2 (N.D. Ind. Aug. 27, 2012) (DeGuilio, J.). *See also Silver Streak* at \*7.

## II. PLAINTIFF HAS NOT SATISFIED THE THRESHOLD REQUIREMENTS FOR A PRELIMINARY INJUNCTION

### A. Plaintiff Fails to Demonstrate A Reasonable Likelihood of Success on the Merits

#### 1. Plaintiff fails to show a likelihood that he will prevail on his claims of gender-based discrimination.

Plaintiff asserts two theories for recovery under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681-88 ("Title IX"): 1) the panel reached an erroneous outcome; and 2) DePauw was deliberately indifferent to gender-based discrimination against him. With respect to Plaintiff's erroneous outcome claim, "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d. Cir. 1993). Title IX claims attacking disciplinary proceedings on the ground of gender bias generally fall within two categories: 1) the student was wrongly found to have committed an offense as a result of his gender, and 2) the procedures were biased against the student as a result of his gender. *Id.* The latter category of gender bias can encompass claims of selective enforcement, deliberate indifference, and archaic assumptions. *Bleiler v. College of the Holy Cross*, Cause No. 11-11541-DJC 2013 U.S. Dist. LEXIS 127775, *16 (D. Mass. Aug. 26, 2013) (Casper, J.) (citing *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 758 (E.D. Tenn. 2009)). Each of these theories require Plaintiff to demonstrate that DePauw's conduct was motivated by gender bias. *Bleiler* at *15. An erroneous outcome claim requires a showing of particular facts that show "some articulable doubt on the accuracy of the disciplinary proceeding" and "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf*, 35 F.3d at 715.

While Plaintiff articulates a number of complaints about the way DePauw processed the sexual misconduct allegations made against him, he does not allege particularized facts that

6

suggest that gender bias motivated the panel's determination. Conversely, DePauw demonstrates a well-defined procedure and the steps it took in resolving the sexual misconduct charge against Plaintiff. (Babington Aff.). Thus, Plaintiff's erroneous outcome claim is unlikely to succeed on the merits. In this case, the allegations against Plaintiff hinged upon whether the sexual activity was consented to by J.B. The panel determined that J.B. could not have consented to sexual activity, given her level of intoxication. (Ex. 5 to Babington Aff.). The fact that the panel ultimately found some witnesses' testimony to be more credible than others is not evidence of gender bias and will not meet Plaintiff's burden to demonstrate that the outcome of the hearing was erroneous due to gender bias.

Furthermore, Plaintiff's claim has a "fatal gap" due to "the lack of a particularized allegation relating to a causal connection between the [allegedly] flawed outcome and gender bias." *Id.* Plaintiff has not set forth evidence of gender bias that would have contributed to an erroneous outcome, such as "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *See Murray v. N.Y. Univ. College of Dentistry*, 57 F.3d 243, 251 (2d Cir. 1995); *Yusuf*, 35 F.3d at 715; *Bleiler*, 2013 U.S. Dist LEXIS 127775 at *15. In addition, the decision of the panel is entitled to a presumption of honesty and integrity. *Holert*, 751 F. Supp. at 1301 (noting that prior contact between board members and students is likely in a university setting and that alone does <u>not</u> indicate bias or partiality). Thus, without specific evidence demonstrating a gender bias, Plaintiff does not show a reasonable likelihood of success sufficient to support a preliminary injunction in Plaintiff's favor.

Plaintiff's alternate erroneous outcome argument—that DePauw's investigation and hearing procedure were faulty under Title IX—is unsupported. The existence of inconsistencies

7

between a school's policy and the enactment of the policy do not automatically amount to a Title IX violation.  In analyzing Title VII claims in the employment context, the Seventh Circuit held, "[t]he failure to follow internal policy does not matter so long as the employer's response is otherwise reasonable. . . ." *Milligan v. Bd. of Trustees of Southern Ill. Univ.*, 686 F.3d 378, 387 (7th Cir. 2012) (citing *Restatement (Third) of Torts: Phys. & Emot. Harm. § 13 cmt. f* (2010) for the proposition that "evidence of internal standards 'does not set a higher standard of care for the actor.'").[1]

DePauw investigated the allegations against Plaintiff, conducted a hearing at which both parties had an opportunity to participate fully, determined the facts, processed an appeal and made a final determination.  Plaintiff declined to participate in the investigation which perhaps limited the scope of the investigation and the witnesses who testified before the panel. (Ex. 6 to Babington Aff.).  Plaintiff argues that he was denied an opportunity to present an impact statement to the panel before sanctioning.  Any effect of this alleged failure was addressed by the reduced sanction on appeal and could have been mitigated by Plaintiff either through his oral testimony or in his Appeal.  The fact that Plaintiff declined to present any impact statement at various points in the disciplinary process should not be turned around as evidence of gender bias by DePauw.  Ultimately, Plaintiff is not entitled to relitigate the merits of the misconduct alleged against him and he will not be able to show that gender bias caused the panel to make an erroneous decision regarding his responsibility under DePauw's Sexual Misconduct Policy.

Turning to Plaintiff's Title IX deliberate indifference claim, Plaintiff must prove "that an official of the institution who had authority to institute corrective measures had actual notice of,

---

[1] "Because the statutes share the same goals and because Title IX mirrors the substantive provisions of Title VI of the Civil Rights Act of 1964, courts have interpreted Title IX by looking to the body of law developed under Title VI, as well as the caselaw interpreting Title VII." *Yusuf*, 35 F.3d at 714 (internal citations omitted).

and was deliberately indifferent to, the [sexual] misconduct." *Doe v. Univ. of the South*, 687 F.Supp.2d 744, 757 (E.D. Tenn. 2009).

Plaintiff's allegations do not fit within the framework for deliberate indifference, which creates liability for an institution that permits a hostile environment due to sexual harassment. Indeed, deliberate indifference is the claim that DePauw would be exposed to from complainants such as J.B. in the event it would fail to investigate charges of sexual misconduct and sexual harassment and take appropriate measures to sanction individuals found responsible. *See*, *e.g.*, *Hendrichsen v. Ball State Univ.*, 107 Fed. Appx. 680, 684 (7th Cir. 2004); *Murray*, 57 F.3d 243; *Ha v. Northwestern Univ.*, Cause No. 1:14-cv-00895 (N.D. Ill., filed Feb. 10, 2014); *Luby, et al. v. Univ. of Conn.*, Cause No. 3:13-cv-01605 (D. Conn., filed Nov. 1, 2013). Plaintiff's own arguments confirm that the deliberate indifference claim arises when a plaintiff is subject to sexual harassment, as he quotes *Univ. of the South* for the proposition that "[t]he deliberate indifference standard is met where the '**recipient's response to the harassment or lack thereof** is clearly unreasonable in light of known circumstances.'" (Pltf. Br. at 9 (quoting 687 F. Supp.2d at 757)) (emphasis added). No such showing is made here.

Even if Plaintiff's deliberate indifference claim could be properly applied to the facts alleged, the argument that Vice President Babington failed to "cure" gender-based discrimination is unsupported. (Pltf. Br. at 9). "Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Milligan v. Bd. of Trustees of Southern Ill. Univ.*, 686 F.3d 378, 388 (7th Cir. 2012). As evidenced by the decision on Plaintiff's appeal (Ex. 6 to Babington Aff.), Vice President Babington carefully re-examined the evidence heard by the panel, confirmed that the panel's decision as to responsibility was supported by the evidence in the record, and reduced the sanction due to her disagreement with one aspect of the panel's decision. Because the

9

panel's decision was supported by the record, the decision to uphold the finding of responsibility does not evidence deliberate indifference to gender bias. Thus, neither of Plaintiff's theories for liability under Title IX is likely to succeed and neither should support the issuance of a preliminary injunction.

        2.    <u>Plaintiff cannot demonstrate that DePauw breached any contract with him.</u>

"[T]he basic legal relation between a student and a private university or college is contractual in nature." *Park v. Ind. Univ. Sch. of Dentistry*, 781 F. Supp. 2d 783, 786 (S.D. Ind. 2011). "The terms of the contract, however, are rarely delineated, nor do the courts apply contract law rigidly." *Amaya v. Brater*, 981 N.E.2d 1235, *11 (Ind. Ct. App. 2013). Indiana courts take a liberal approach to the scope of contractual promises between students and universities and "exercise the utmost restraint in applying traditional legal rules to disputes within the academic community." *Id.* at *12. *See also Holert*, 751 F. Supp. at 1301 (explaining that courts adopt a deferential standard in evaluating university disciplinary decisions because of a "reluctance to interfere with the academic affairs and regulation of student conduct in a private university.")

> In order to state a claim for breach of contract in the student-university context, [Plaintiff] must point to an identifiable contractual promise that the defendant[ ] failed to honor. The essence of such a claim is not that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service *at all*. **Thus, ruling on a breach of educational contract requires an objective assessment of whether the institution made a good faith effort to perform on its promise.**

*Park* at 786. (italicized emphasis original, bold emphasis supplied). Before a court applying Indiana law should "intervene into the implied contractual relationship between student and university, there must be some evidence that the university **acted arbitrarily** or **in bad faith.**" *Amaya* at *15. *See also Holert*, 751 F. Supp. at 1301 (applying Illinois law, which is

substantively similar to Indiana's law in this area, to determine that a university did not breach its contract with a student where it "conducted its proceedings in substantial compliance with university standards.") (emphasis added).  The DePauw Student Handbook sets forth a detailed procedure for resolving sexual misconduct complaints, and DePauw substantially followed those provisions.  (Ex. 1 to Babington Aff. at 40).  Thus, because DePauw complied with its disciplinary procedure, Plaintiff is not entitled to relitigate the allegations against him. *See, e.g., Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 433 (Pa. Super. 2007) (applying Pennsylvania's substantively similar contract law to a breach of contract claim by a professor challenging denial of tenure on the basis of sexual harassment claims).

Plaintiff has not demonstrated a reasonable likelihood of prevailing on his claim for breach of contract because the evidence shows that, despite Plaintiff's criticisms, DePauw made a good faith effort to perform on its promise to its students.  DePauw followed its investigation protocol and adhered to its disciplinary process in responding to J.B.'s complaint about Plaintiff. (Babington Aff., and Exs. 1 and 6 thereto.).  Even if Plaintiff is able to present some evidence of deviation from DePauw's written policies, the evidence does not support that Plaintiff was denied a fair process for investigating and determining J.B.'s claims or that the process was not substantially compliant with DePauw's written procedures.

This case is similar to *Amaya* where plaintiff alleged breach of contract after being dismissed upon a finding that he had violated the academic standards by cheating during an exam. 981 N.E.2d at *17.  Amaya disputed the result and attacked the fundamental fairness of the disciplinary process.  *Id.* at 17.  The Indiana Court of Appeals held that the school's conclusion was "a rational determination arrived at after much deliberation and after Amaya had numerous opportunities to be heard and to explain his behavior." *Id.*  While Amaya made

conclusory allegations about the fairness of the process, he "failed to designate any facts which would support a reasonable inference that [his school] engaged in the conscious doing of a wrong because of dishonest purpose or moral obliquity or had a state of mind affirmatively operating with furtive design or ill will." *Id.*

Likewise, while Plaintiff attacks the fundamental fairness of the investigation and disciplinary procedures followed by DePauw, he has not provided facts to show that DePauw conducted its investigation and disciplinary proceedings in dishonesty and not in good faith. DePauw's Public Safety personnel and Hearing Board members are trained for their roles in the investigation and adjudicatory process. (Babington Aff.). The evidence also shows that one reason for the complained-of limitations in DePauw's investigation was that Plaintiff refused to participate in the investigation and failed to identify potential witnesses for DePauw to interview. DePauw made a good faith investigation while balancing the competing interests of fact-finding and respecting the privacy of both Plaintiff and J.B. by not interviewing every student who might have had some morsel of information about the night in question, and instead focusing its investigation on witnesses identified as possibly having relevant information. Plaintiff's complaints about the fairness of the hearing are similarly related to his own decision to decline the University's offer of an advisor who was a trained member of the Sexual Misconduct Board. Plaintiff fails to demonstrate a reasonable likelihood of success on the merits and a preliminary injunction should not issue on the basis of this claim.

3. <u>Plaintiff is unlikely to prevail on his claims for negligence, intentional infliction of emotional distress, promissory estoppel, or defamation.</u>

Plaintiff fails to make any argument as to the likelihood that he will prevail on his claims for negligence, intentional infliction of emotional distress, promissory estoppel, or defamation. DePauw's Public Safety Personnel conducted an investigation, a hearing was held by persons trained to hold hearings, a sanction was imposed upon a finding of responsibility, and after formal appeal, a modified sanction was imposed. This is all the law requires on Plaintiff's remaining state law claims.

- Plaintiff is unlikely to prevail on his claim for negligence because DePauw complied with its investigatory and procedural protocol, thus meeting any duty owed to Plaintiff.

- Plaintiff is unlikely to prevail on his claim for intentional infliction of emotional distress because DePauw conducted a good-faith investigation of sexual misconduct charges and followed a disciplinary process outlined in its Student Handbook that complies with federal mandate, and the sanction implemented by DePauw is consistent with the panel's conclusion that Plaintiff was responsible for sexual misconduct.

- Plaintiff's promissory estoppel claim is likely to fail for the same reasons that his breach of contract claim will likely fail: DePauw complied with its obligation to follow appropriate procedure in investigating and evaluating the sexual misconduct claims against Plaintiff. DePauw did not breach its contractual obligations to Plaintiff by implementing discipline against him consistent with DePauw's code of conduct and Student Handbook.

- As a threshold matter, Plaintiff's defamation claim is subject to dismissal because it is not plead with particularity as required by *Trail v. Boys & Girls Clubs of N.W. Ind.*, 845 N.E.2d 130, 136-37 (Ind. Ct. App. 2006). In any event, Plaintiff is unlikely to prevail on this claim because the statements made by DePauw about Plaintiff in connection with the sexual misconduct investigation and hearing are privileged under Indiana's common interest privilege. *See*, *e.g.*, *Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 188 (Ind. 2010).

### B. Plaintiff Has an Adequate Remedy at Law and Will Not Suffer Irreparable Harm Upon the Denial of His Motion

Plaintiff merely alleges that he has no adequate remedy at law and fails to provide any supporting facts for these allegations. DePauw is refunding or crediting the tuition for the current semester. He further complains about possible delay in the completion of his college career and the loss of prestige of graduating from DePauw. These harms are illusory, at best, and likely within his control. For example, Plaintiff makes no showing that he cannot attend another school and transfer the credit to DePauw. In any event, Plaintiff merely speculates that his suspension will delay his college career and that this delay could cause him harm later. Plaintiff also complains about not being able to play football at DePauw in the fall—hardly irreparable harm, given that Plaintiff makes no allegation that his status as a football player affects his professional trajectory or scholarship status. Moreover, as with Plaintiff's other complaints, the ability to play competitive football is not inextricably linked to his status as a DePauw student. There are other options for Plaintiff to engage in the sport.

### III. THE BALANCING OF THE HARMS DOES NOT FAVOR PLAINTIFF

Because Plaintiff failed to meet the above "threshold" requirements for a preliminary injunction, this Court need not, and DePauw respectfully submits should not, consider the balancing of harms. *See Silver Streak Indus., LLC v. Squire Boone Caverns, Inc.*, 2014 U.S. Dist. LEXIS 7015, at *6 ("If the court determines that the moving party has failed to demonstrate any one of these threshold requirements, it must deny the injunction.")

If the Court desires to address the balance of harms, it weighs against Plaintiff's request. *See Roland Machinery Co. v. Dressert Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984) ("[S]ince the defendant may suffer irreparable harm from the entry of a preliminary injunction, the court must not only determine that the plaintiff will suffer irreparable harm if the preliminary

injunction is denied–a threshold requirement for granting a preliminary injunction–but also weigh that harm against any irreparable harm that the defendant can show he will suffer if the injunction is granted.").

As discussed above, the harm that Plaintiff has articulated is temporal, at best. In contrast, DePauw's harm, as addressed above, would be substantial upon entry of a preliminary injunction. DePauw is required to maintain a safe, non-hostile environment for all students, including J.B. and Plaintiff. *See*, *e.g.*, *Murray*, 57 F.3d at 249. Upon reaching a determination that Plaintiff was responsible for a violation of DePauw's Sexual Misconduct Policy, it had a duty to implement sanctions to address the impact to J.B., prevent further occurrences and prevent the campus from becoming a hostile environment. (Office of Civil Rights, *Dear Colleague Letter*, Apr. 4, 2011). Plaintiff's argument that DePauw would have immediately removed him if it truly considered him to be a threat to the campus is inconsistent with his assertion that he should receive a fair disciplinary process. In this instance, J.B.'s allegation of misconduct against Plaintiff alone was insufficient to establish responsibility in the eyes of DePauw. *See*, *e.g.*, *St. Francis School Dist.*, 694 F.3d at 872 ("to know that someone suspects something is not to know the something and does not mean the something is obvious"). DePauw's provision of full process to Plaintiff should not operate to later restrict its ability to sanction Plaintiff upon reaching a final determination as to Plaintiff's responsibility for the misconduct alleged against him.

Finally, the harm to the public weighs in favor of denying Plaintiff's request for a preliminary injunction. As demonstrated above, the public interest is served by enforcing DePauw's disciplinary process—thereby complying with its obligations under Title IX.

Accordingly, the sanction against Plaintiff should proceed and the court should deny Plaintiff's request for a preliminary injunction.

## IV.    A BOND SHOULD BE REQUIRED IF THE COURT ENTERS A PRELIMINARY INJUNCTION

Plaintiff makes no statement about his willingness to post a bond if the Court orders relief. The "instances in which a bond may not be required are so rare that the requirement is almost mandatory." *Hummel*, 2013 WL 817382, at *3 (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988)). Particularly given the unlikelihood of success, there is nothing here that warrants a waiver of the required security. As discussed above, DePauw has an obligation under Title IX to resolve instances of sexual misconduct and harassment in a manner that prevents its campus from becoming a "hostile environment" to other students, particularly the complainant, J.B. In the event that the Court decides to grant preliminary relief, and DePauw submits it should not, Plaintiff should be required to post a bond sufficient to compensate DePauw if it is wrongfully enjoined.

## V.    TERMS OF ANY INJUNCTION

To the extent Plaintiff's requested preliminary injunction is granted, it should be fashioned to minimize the effect upon J.B. and the rest of the DePauw student body. Plaintiff seeks an injunction to "enjoin DePauw from suspending him for the spring 2014 and fall 2014 semesters." (Pltf. Br. at 7). This requested relief apparently would allow Plaintiff "to complete his education" at DePauw. (Pltf. Br. at 13). In other words, the preliminary relief Plaintiff seeks would provide him with complete relief as if no allegations of sexual misconduct or determination of responsibility for such conduct had ever been made. Plaintiff acknowledges the existence of potential arrangements to reduce these harms, such as strictly limiting Plaintiff's on-campus activities to attendance at class and preventing him from living on campus or

participating in university sponsored or affiliated events.  (Pltf. Br. at 6).  DePauw does not agree that such safeguards are sufficient to meet its obligations to maintain a safe campus, but asks that, at the very least, such safeguards be included in any injunctive relief granted by the Court.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,


*/s/  Brian W. Welch*
Brian W. Welch [1556-49]
Margaret M. Christensen [27061-49]
BINGHAM GREENEBAUM DOLL LLP
2700 Market Tower
10 West Market Street
Indianapolis, Indiana  46204
Telephone: 317.635.8900
Fax: 317.236.9907
Email:  bwelch@bgdlegal.com
            mchristensen@bgdlegal.com

*Attorneys for Defendant, DePauw University*

## **CERTIFICATE OF SERVICE**

I certify that on March 19, 2014, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

William W. Drummy
Holly A. Reedy
WILKINSON, GOELLER, MODESITT,
  WILKINSON & DRUMMY, LLP
333 Ohio Street
Terre Haute, IN 47807
wwdrummy@wilkinsonlaw.com
hareedy@wilkinsonlaw.com
*Attorneys for Plaintiff, Benjamin King*


       */s/  Brian W. Welch*
       Attorney for DePauw University

15215537.6