UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BENJAMIN KING, | ) |
|       Plaintiff, | ) ) ) |
| vs. | )   Case No.    2:14-cv-0070-WTL-DKL ) |
| DEPAUW UNIVERSITY, | ) ) |
|       Defendant. | ) |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

The Plaintiff, Benjamin King ("King"), by counsel, submits his Reply to the Response filed by the Defendant, DePauw University ("DePauw"), to King's Motion for Preliminary Injunction.

This brief responds to DePauw's arguments that (1) King has failed to demonstrate a reasonable likelihood of success on the merits; (2) King has an adequate remedy at law and will not suffer irreparable harm; (3) the balancing of harms favors DePauw; and (4) a bond should be required.

**I.    King has a "better than negligible" likelihood of success on his Title IX and state law implied contract claims.**

The parties have set forth the standards for granting a preliminary injunction. However, it is important to emphasize that King must overcome a very low threshold to show likelihood of success on the merits. In *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387 (7th Cir. 1984), the Seventh Circuit described this threshold:

> [T]he plaintiff has another threshold to cross: that of showing some likelihood of succeeding on the merits. It is not enough that the failure to get the injunction will be a disaster for him whereas the injunction would be only a minor inconvenience to the defendant. Equity jurisdiction exists only to remedy legal wrongs; without some showing of a probable right there is no basis for invoking it…we agree that the threshold is low. ***It is enough that "the plaintiff's chances are better than negligible***…."

*Id.* (*quoting Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982)) (emphasis added); *see also International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988) ("At the preliminary injunction stage, 'a plaintiff need only demonstrate that he or she has a 'better than negligible' chance of succeeding on the merits to justify injunctive relief.'"); *Lawler Mfg. Co., Inc. v. Bradley Corp.*, No IP98-1660-CM/S, 2000 WL 1456336 (S.D. Ind. Apr. 26, 2000) ("Based on the evidence presented, [the plaintiff]'s success on this argument, although not 'likely' in the normal sense of the word, is more than negligible.").

The low threshold of "better than negligible" is the result of the time pressures and lack of discovery available at the preliminary injunction stage. "[T]he plaintiff's motion in this case was decided under the time pressures characteristic of preliminary injunction hearings and without the benefit of extensive discovery. For these reasons, ***the plaintiff's burden at the preliminary injunction stage is slight***…." *International Kennel Club of Chicago, Inc.* 846 F.2d at 1086 (emphasis added). The same level of proof is required under Indiana law for granting a preliminary injunction. *See Indiana High School Athletic Ass'n, Inc. v. Martin*, 731 N.E.2d 1, 7 (Ind. Ct. App. 2000) ("Our state and the federal standards may differ in the terms used, but do not differ in the quantum of the evidence required."). King's case overcomes the low threshold of likelihood of success on his Title IX and state law implied contract claims.

### A. DePauw's investigation, hearing, and appeal process discriminated against King on the basis of his sex.

King's immediate need for a preliminary injunction has required him to file his request for an injunction without having the benefit of discovery. However, the evidence and inferences from the evidence create a "better than negligible" likelihood that King will be successful on his Title IX claim.

"Allegations of a casual connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2nd Cir. 1994). "Such allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id*.

In *Yusuf*, a college male brought a similar Title IX claim for the college's failures in investigating a charge of sexual harassment and disciplining him. The Second Circuit reversed the district court's dismissal of Yusuf's claim:

> The allegations concerning the circumstances surrounding the charge against Yusuf and the conduct of the disciplinary proceeding sufficiently put into question the correctness of the outcome of that proceeding. The allegation that males invariably lose when charged with sexual harassment at Vassar provides a verifiable casual connection similar to the use of statistical evidence in an employment case.

*Id*. at 716.

At this early stage in the litigation and without the benefit of discovery, King has not yet uncovered the "smoking-gun" evidence that would definitely prove discrimination. Many employment-related discrimination cases proceed to trial and result in plaintiff's verdicts without such blatant evidence. However, there is evidence that King will prevail in proving sex discrimination.

First, the complete failure of the investigation, hearing, and appeal is evidence that the ultimate goal of the process was not to determine the truth of the allegations against King, but rather was to find the male accused student responsible. A reasonable investigation and hearing *without bias* would not have such serious flaws on the face of the investigation.

Based on the following facts, a reasonable person would not find that this investigation was unbiased or that the outcome was fair:

- A student was expelled after being accused of nonconsensual sexual activity after he engaged in sexual activity while *both* consenting adults were intoxicated.

- The investigation consisted of interviewing the alleged victim's sorority sisters eight weeks after the alleged incident.

- The investigator admits that she only interviewed the students that the alleged victim asked her to interview.

- The investigator did not interview other students who were present that night or follow up on pertinent text messages and medical records.

- The hearing board denied a one-week request from the accused male for an extension of time to prepare for the hearing, without any justification or reasoning. This denial came after the Title IX coordinator had promised the accused male that he would have sufficient time to prepare for the hearing.

- The alleged victim had a highly trained advocate and advisor throughout the process, while the accused male received the assistance of a professor without any experience or training in sexual assault and Title IX cases.

- None of the witnesses saw the accused male and the alleged victim together on the night in question.

- The hearing board relied on the testimony of the heavily intoxicated sorority sisters of the accused victim to rate her level of intoxication and to find that she was incapacitated to the point of not being able to consent to sexual activity.

- The hearing board discounted the testimony of the alleged victim's sober sorority sister and roommate who testified that the alleged victim was not heavily intoxicated and that she had seen her much more intoxicated on other occasions.

4

> ➢ The hearing board discounted the testimony of the accused male who testified that the alleged victim did not appear to be heavily intoxicated and actively participated in the sexual activity.

Based on these basic facts and inferences from the hearing board's processes and findings, a reasonable person would conclude that the hearing board would not have reached this decision without bias against the accused male.

The climate on campus at the time of the hearing and the relationships between the key players in the process explain the bias behind the unfair processes described above. The undersigned incorporates the arguments contained in the original preliminary injunction brief and in King's administrative appeal, attached to the brief as *Exhibit A*.

In 2011, DePauw received a $299,006 grant from the Department of Justice Office of Violence Against Women ("OVW"). According to the OVW web site, DePauw is required to do the following:

> Campuses, in partnership with community-based nonprofit victim advocacy organizations and local criminal justice or civil legal agencies, must adopt protocols and policies that treat violence ***against women*** as a serious offense and develop victim service programs that ensure victim safety, ***offender accountability***, and the prevention of such crimes.

*(http://www.ovw.usdoj.gov/ovwgrantprograms.htm#1)*(emphasis added). This requirement focuses on violence against *women*, as opposed to campus violence against both genders, and focuses on "offender accountability." It follows from these mandates that the likely offenders will be males in the majority of campus cases. There is a better than negligible likelihood that DePauw, in receiving this substantial grant, focused its efforts on remedying violence against female victims, became biased in favor of female victims, and treated the male "offenders" unfairly.

DePauw also has an active Code TEAL organization on campus, that is believed to be an organization "by women for women" that is part of the "Feminista!" organization. The "Feminista!" organization is aimed at empowering women to "stomp down oppression." The Women's Center, directed by J.B.'s advocate and advisor, Sarah Ryan, hosts TEAL events and meetings. The Title IX Coordinator and spouse of Sarah Ryan, Dorian Shager, volunteers at TEAL events.

The combination of DePauw's federal grant and support for violence against women and holding male offenders accountable has created a campus culture and campus proceedings that are biased against males alleged to have committed sexual misconduct against female victims.

There is evidence that other individuals have been treated unfairly on DePauw's campus. There was a comment posted on DePauw's online university newspaper on February 21, 2014, the week before King's hearing, which stated:

> …Babington, Nally and their ilk *fumble around with sexual assault accusations in ways that do no favors for victims and do no favors for the unjustly accused*. Accusations of serious criminal activity should be immediately referred to the actual police and/or Putnam County Prosecutor. Unfortunately, *the administration is spooked by the possible loss of federal funding if they don't play the Title IX game*.

(*See Exhibit N, pg 11, to King's Administrative Appeal, attached to the Preliminary Injunction brief as Exhibit A*)(emphasis added). Certainly discovery is needed to identify the individual posting this comment; however, this does indicate that there are likely other males on DePauw's campus that have been treated unfairly and unjustly punished based on sex discrimination.

**B.     DePauw breached its implied state law contract with King to follow its own policies and procedures.**

There is a "better than negligible" probability that King will show that DePauw breached its implied state law contract based on DePauw's bias in favor of J.B. because of her family connections. As discussed above, the evidence in this case will likely show that male accused students are discriminated against in Title IX investigations based on their sex. However, another possibility is that the evidence may show that King was singled out and disciplined more severely than the average male accused student.

In October 2012, R. David and Suzanne A. Hoover donated $25 million to DePauw, and Hoover Hall is currently being constructed in their honor. It is King's understanding that J.B. has a close familial relationship with R. David Hoover. It is believed that he is her uncle. On the Friday before King's hearing, the front page of "The DePauw", the student newspaper, had an article featuring Hoover Hall. (*See Exhibit M to King's Administrative Appeal, attached to the Preliminary Injunction brief as Exhibit A*). It is also believed that J.B.'s parents have close ties to DePauw, which may have been a factor in the severe bias against King.

To prevail on his state law implied contract claim, King must prove that DePauw acted illegally, arbitrarily, capriciously, or in bad faith in failing to provide a fair investigation and hearing. *Change v. Purdue University*, 985 N.E.2d 35, 47 (Ind. Ct. App. 2013). It is very likely in this case that King will be able to show that DePauw treated him unfairly and was biased in favor of J.B. because of J.B.'s relationship with the Hoovers. The evidence is likely to show that DePauw sacrificed King's rights to fairness and equality in favor of the niece of a very important and valued donor to the university. Of course this connection and bias cannot be definitively proven until discovery is completed to investigate the Hoover connection; however, there is a "better than negligible" likelihood that King will prevail on this claim.

**II.     There is no adequate remedy at law and King will suffer irreparable harm if his motion is denied.**

DePauw minimizes the irreparable harms to King if his request for a preliminary injunction is denied. Irreparable harm is "harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Machinery v. Dresser Industries*, 749 F.2d 380, 386 (7th Cir. 1984). "The question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded damages." *Id*. "In saying that the plaintiff must show that an award of damages at the end of trial will be inadequate, we do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered." *Id*.

In *Roland*, the court considered four situations in which a damages remedy can be inadequate, two of which are relevant to this case. The first is when the damages award comes too late to save the plaintiff's business, or, in this case, his education:

> As Judge Friendly noted in a case involving the termination of an automobile dealer, "the right to continue a business in which [the plaintiff] had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms; the [plaintiffs] want to sell automobiles, not to live on the income from a damages award.

*Id*. at 386. Similarly, King wants to complete the current semester and obtain his degree. He wants to avoid the gap in his transcripts and being labeled as a sexual predator. It is not enough for King to receive a monetary damages award, as such an award will not replace what is lost to King.

Another situation in which monetary damages are inadequate is when the "nature of the plaintiff's loss" makes the damages very difficult to calculate. *Id*. The damages in this case would be very difficult to calculate, especially when the damages include elements of delaying Kings' college goals, obtaining a degree from a different and perhaps less prestigious university, and being labeled as a sex offender.

8

King will lose half an academic year, which will likely equal one year for graduate school, he will not receive a DePauw University degree, and he will be deprived of his senior year of football at DePauw. To say that King does not suffer irreparable harm because he could potentially transfer to another university or play football in another forum is to minimize the devastating impact this case has had and will continue to have on this young man's life and future.

Most importantly, King will have a gap in his academic transcripts for the current semester that will lead future employers and graduate schools to ask questions that will force King to reveal that he was wrongfully terminated for sexual misconduct. It goes without stating that being identified as a sexual predator, or even creating the *possibility* in the minds of others that he is a sexual predator, is an irreparable harm that will have lasting effects on King's future. These damages cannot be cured by a simple monetary award, and a monetary award would be difficult to calculate. Therefore, a preliminary injunction is necessary to protect King from additional damages.

## III.   The balance of harms favors granting the preliminary injunction.

The harms to King discussed above greatly outweigh any potential harm to DePauw. DePauw states that it has an obligation "to maintain a safe, non-hostile environment for all students, including J.B. and Plaintiff." DePauw implies that its ability to maintain such an environment would somehow be impaired by the entry of the preliminary injunction.

However, DePauw has successfully maintained a safe, non-hostile environment for half of the semester, despite King's presence on campus. While the investigation was pending, DePauw issued a no-contact order, preventing King from having any communications with J.B. King abided by this no-contact order, and there is no allegation that King contacted J.B. or

retaliated against her in any way. Even when the sanction of expulsion was read to King live in the presence of the board, advisors, and J.B., King handled himself in a professional manner. He did not act out or show disrespect for J.B. in any manner. King continued to attend classes while the administrative appeal was pending, without incident and without creating a hostile environment.

King has suggested that the preliminary injunction could have certain restrictions that would remove any threat of a hostile environment or that would pose a safety risk to J.B. King has shown that he can and will comply with such restrictions. These types of restrictions would remove any risk to DePauw in granting the preliminary injunction.

**IV.    A bond is not necessary in this case because the potential damages to DePauw are non-existent.**

King should not be required to post a bond because the preliminary injunction will not cause DePauw harm or damages. Fed. R. Civ. P. 65(c) provides for security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In certain cases, courts have waived the requirement of a bond or allowed the posting of a nominal bond. *See Cronin v. U.S. Dept. of Agriculture*, 919 F.2d 439, 445 (7th Cir. 1990).

A bond would be necessary if DePauw could show some quantifiable damages that it is likely to incur by the granting of the preliminary injunction. The injunction alone will not cause DePauw any damages. King would have to violate the Court's restrictions on his presence on campus and involvement in campus activities to create a hostile environment for J.B. If the Court grants the preliminary injunction and DePauw ultimately prevails on the merits, it will not have incurred any actual damages from being wrongfully enjoined by allowing King to complete his coursework.

WHEREFORE, the Plaintiff, Benjamin King, by counsel, respectfully requests the Court grant a preliminary injunction in his favor and enjoin DePauw from suspending King for the remainder of the current semester and for the fall semester.

Respectfully Submitted,

/s/ William W. Drummy
William W. Drummy, #4607-84


/s/ Holly A. Reedy
Holly A. Reedy, #27558-84

WILKINSON, GOELLER, MODESITT,
   WILKINSON & DRUMMY, LLP
333 Ohio Street
Terre Haute, IN 47807
Telephone:  (812) 232-4311
Fax:  (812) 235-5107
Attorneys for Benjamin King

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2014, a copy of the foregoing Response in Opposition to Motion for Preliminary Injunction was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Brian W. Welch
Email: bwelch@bgdlegal.com

Margaret M. Christensen
Email: mchristensen@bgdlegal.com

/s/ Holly A. Reedy
Holly A. Reedy
