**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| BENJAMIN KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 2:14-cv-0070-WTL-DKL |
| | ) | |
| DEPAUW UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER OF DEPAUW UNIVERSITY

Defendant, DePauw University ("DePauw"), for its Answer to Plaintiff's Complaint, restates the allegations in Plaintiff's Complaint and Answers those as follows:

## NATURE OF THE ACTION

1.      By this action, King seeks to obtain an injunction, reinstatement, and damages for DePauw's wrongful suspension of him based on false allegations of sexual assault.

**ANSWER:  DePauw is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint and therefore denies the same.**

2.      King enrolled at DePauw for the 2011-2012 school year and has been enrolled continuously as an undergraduate student until his wrongful suspension on March 13, 2014.

**ANSWER: DePauw admits that King enrolled for the 2011-2012 school year, has been enrolled continuously, and denies the remaining allegations contained in Paragraph 2 of the Complaint.**

3.      King is currently in the second semester of his junior year and is studying kinesiology.  He intends to pursue a graduate degree in the healthcare field.

**ANSWER: DePauw states that King has completed 20 of 31 credits and two of three winter terms required to graduate from DePauw. DePauw is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the Complaint and therefore denies the same.**

4.　　On March 13, 2014, he was suspended from DePauw based upon a false allegation of sexual misconduct.

**ANSWER: DePauw admits that King was suspended from DePauw on March 13, 2014, following investigation, hearing and appeal under DePauw's Community Standards Process. DePauw denies the remaining allegations contained in Paragraph 4 of the Complaint.**

5.　　The suspension has deprived him of the opportunity to continue and complete his education, and it will have a substantially negative impact on his education and career.

**ANSWER: DePauw denies the allegations contained in Paragraph 5 of the Complaint.**

6.　　King is entitled to preliminary and permanent injunctive relief to allow him to complete his current semester, to have DePauw's decision vacated and his academic record expunged of the suspension, and to compensatory and punitive damages for DePauw's discriminatory processes and procedures, breach of contract, and false statements.

**ANSWER: DePauw denies the allegations contained in Paragraph 6 of the Complaint.**

## JURISDICTION AND VENUE

7.     This Court has federal question jurisdiction over the allegations in this Complaint pursuant to 28 U.S.C. § 1331 because the claims involve questions arising under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88.  The Court also has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367 because the claims involve state law claims arising out of the same case or controversy giving rise to the federal law claims.

**ANSWER:   DePauw is without information sufficient to admit or deny the allegations contained in Paragraph 7 of the Complaint and therefore denies the same.**

8.     King is a citizen of the United States and is domiciled in the State of Indiana.

**ANSWER:   DePauw admits the allegations contained in Paragraph 8 of the Complaint.**

9.     DePauw is an Indiana non-profit domestic corporation operating as an educational institution receiving federal financial assistance.

**ANSWER:   DePauw admits that it is a corporation organized and existing under a special charter granted by the State of Indiana, and that it receives federal financial assistance.**

10.     This Court has personal jurisdiction over DePauw on the grounds that DePauw is conducting business in the State of Indiana.

**ANSWER:   DePauw does not contest the allegations contained in Paragraph 10 of the Complaint.**

11.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391 because DePauw is considered to reside in this judicial district, i.e., Putnam County, Indiana, and a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

**ANSWER:    DePauw does not contest the allegations contained in Paragraph 11 of the Complaint.**

## FACTUAL ALLEGATIONS

12.    King has been a student-athlete at DePauw since August 2011.

**ANSWER:    DePauw admits the allegations contained in Paragraph 12 of the Complaint.**

13.    King attended one year of college at Indiana State University, for the 2010-2011 Academic year, where he received athletic and academic scholarships.

**ANSWER: DePauw admits that King attended one year of college at Indiana State University, and is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 13 of the Complaint and therefore denies the same.**

14.    King gave up his scholarships at Indiana State University for the opportunity to attend and play football at DePauw.  King was in the second semester of his junior year at DePauw when he was suspended on March 13, 2014.

**ANSWER: DePauw admits that King has completed 20 of 31 credits and two of three winter terms required to graduate from DePauw, and is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 14 of the Complaint and therefore denies the same.**

15.    Following the spring 2014 semester at DePauw, King would have only needed to complete nine courses to graduate.

**ANSWER:  DePauw admits that King requires eight credits and a winter term in addition to his Spring, 2014 courses to graduate from DePauw, and is without sufficient**

information to form a belief as to the truth of the remaining allegations contained in Paragraph 15 of the Complaint and therefore denies the same.

16.     On December 6, 2013, King's fraternity hosted a party attended by a large number of DePauw students on campus.

**ANSWER: DePauw admits that Delta Tau Delta hosted a party on December 6, 2013, and that there were numerous persons in attendance. DePauw is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 16 of the Complaint and therefore denies the same.**

17.     Many of the student party attendees consumed alcohol before and during the party.

**ANSWER:     DePauw admits that those students it interviewed consumed alcohol, and is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and therefore denies the same.**

18.     In the early morning hours of December 7, 2013, King and a fellow DePauw student ("J.B.") engaged in consensual sexual activity in King's bedroom at his fraternity house.

**ANSWER:     DePauw denies the allegations contained in Paragraph 18 of the Complaint.**

19.     J.B. was actively participating in the sexual encounter, including removing her own clothing and asking King to have sexual intercourse with her.

**ANSWER:     DePauw denies the allegations contained in Paragraph 19 of the Complaint.**

20.     King and J.B. engaged in sexual activities, but they did not have sexual intercourse.

**ANSWER:** DePauw is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and therefore denies the same.

21. That evening, J.B. went to Putnam County Hospital to have a sexual assault examination and claimed that she had been sexually assaulted. The results of testing showed that she did not have any date-rape drug in her system, and there was no evidence of rape.

**ANSWER: DePauw admits that a sexual assault examination was performed upon J.B. on December 7, 2013, that J.B. claimed to have been sexually assaulted, and states that the results of the sexual assault examination speak for themselves. DePauw is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 21 of the Complaint and therefore denies the same.**

22. J.B. put DePauw on notice of the alleged sexual assault on December 8, 2013.

**ANSWER: DePauw admits that sometime on December 8, 2013, J.B. met with Megan Daw about the events of December 7, 2013, that on the morning of December 9, 2013, J.B. met with Sarah Ryan, and that as of December 16, 2013, J.B. did not want to make a report to DePauw Public Safety or pursue a police investigation. DePauw denies the remaining allegations contained in Paragraph 22 of the Complaint.**

23. DePauw's Title IX coordinator, Dorian Shager, interviewed King on December 18, 2013 regarding the allegations. He informed King that their discussion would be "off the record." King explained what happened and that it was consensual sexual activity.

**ANSWER: DePauw admits that Dorian Shager is DePauw's Title IX coordinator, that Shager interviewed King on December 18, 2013, and that King indicated to Shager**

that his sexual contact with J.B. was consensual.  DePauw denies the remaining allegations contained in Paragraph 23 of the Complaint.

24.     DePauw did not take any other actions to investigate the alleged sexual assault.

**ANSWER:   DePauw   denies   the   allegations   contained   in   Paragraph   24   of   the Complaint.**

25.     On January 22, 2014, J.B. decided that she wanted to pursue a sexual misconduct charge against King.

**ANSWER:  DePauw admits that it learned of J.B.'s decision that she wanted to file a formal report against King on January 22, 2014.    DePauw is without sufficient information to form a belief as to the truth of the allegation that J.B. made this decision on January 22, 2014, and therefore, denies the same.**

26.     DePauw's Office of Public Safety was responsible for the investigation with Captain Charlene Shrewsbury conducting the interviews.

**ANSWER:   DePauw admits the allegations contained in Paragraph 26 of the Complaint.**

27.     Shrewsbury interviewed J.B., who claims that she was so intoxicated on the night of the alleged sexual encounter that she does not remember large portions of the evening, including the entire time she was with King.

**ANSWER:   DePauw admits that Shrewsbury interviewed J.B., states that the results of those interviews speak for themselves, and is without information sufficient to admit or deny the remaining allegations contained in Paragraph 27 of the Complaint and therefore denies same.**

28.     J.B. gave Shrewsbury a list of students with whom she was in contact with the evening of December 6, 2013.

**ANSWER:    DePauw admits the allegations contained in Paragraph 28 of the Complaint.**

29.     Despite having a list of students who were present at the party and the knowledge that there were many other students there, Shrewsbury only interviewed a select number of students as requested by J.B.

**ANSWER:    DePauw denies the allegations contained in Paragraph 29 of the Complaint.**

30.     Shrewsbury admitted that she interviewed only students J.B. told her to interview, all of whom were J.B.'s sorority sisters.

**ANSWER:    DePauw denies the allegations contained in Paragraph 30 of the Complaint.**

31.     The witnesses were interviewed eight to 11 weeks after the alleged assault.  By this time, their memories of the party had faded, especially since many of them were intoxicated on the night of the party.  The delay also allowed the witnesses to have extensive time to discuss the "facts" with J.B.

**ANSWER:    DePauw denies the allegations contained in Paragraph 31 of the Complaint.**

32.     J.B. provided a copy of her medical records from December 7, 2013, with portions redacted.  DePauw only received the redacted copies and did not inquire as to the relevancy of the redacted information.

**ANSWER: DePauw admits the allegations contained in Paragraph 32 of the Complaint.**

33.     Shrewsbury and DePauw did not seek or gather other important evidence, including text messages referenced in J.B.'s statement that J.B. relied upon to claim that King's actions were "predatory."

**ANSWER: DePauw denies the allegations contained in Paragraph 33 of the Complaint.**

34.     Shrewsbury and DePauw did not request a professional medical opinion regarding information contained in J.B.'s medical records, including the presence of amphetamines in her system and the potential impact that could have on J.B.'s claim and her short term memory.

**ANSWER: DePauw denies the allegations contained in Paragraph 34 of the Complaint.**

35.     Shrewsbury and DePauw did not question any witnesses relating to King's level of intoxication on the night in question.

**ANSWER: DePauw denies the allegations contained in Paragraph 35 of the Complaint.**

36.     In attempting to obtain King's side of the story, Shrewsbury treated King as if he were a criminal and took actions and made statements that strongly discouraged him from discussing what happened. Thereafter, DePauw's Sexual Misconduct Hearing Board ("the Board") and the Vice President for Student Life, Cindy Babington, later criticized King for not actively participating in the investigation.

**ANSWER: DePauw denies the allegations contained in Paragraph 36 of the Complaint.**

37.     DePauw officially informed King on February 12, 2014, that he was charged with non-consensual sexual contact and sexual harassment.

**ANSWER:    DePauw admits the allegations contained in Paragraph 37 of the Complaint.**

38.     A hearing before the Board was scheduled for February 20, 2014.

**ANSWER:    DePauw admits the allegations contained in Paragraph 38 of the Complaint.**

39.     King requested an extension of the hearing because he needed additional time to prepare.  King was denied an extension, without explanation or justification.

**ANSWER: DePauw admits that King requested the hearing date be rescheduled and that his request was denied initially.  DePauw denies that it lacked a justification for denying King's request.  DePauw is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 39 of the Complaint and therefore denies the same.**

40.     King explained that he had previously been told by the Title IX coordinator that he could have additional time to prepare for the hearing, but he was still denied an extension of time without justification.

**ANSWER:  DePauw denies that it lacked a justification for denying King's request, and is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 40 of the Complaint and therefore denies the same.**

41.     The hearing was ultimately rescheduled for February 24, 2014, for other reasons relating to a scheduling conflict and Shrewsbury needing to interview an additional witness.

**ANSWER: DePauw admits the allegations contained in Paragraph 41 of the Complaint.**

42. King's witnesses were not interviewed by Shrewsbury, as J.B.'s witnesses had been interviewed.

**ANSWER: DePauw admits that Shrewsbury interviewed all witnesses identified by J.B., and that King did not identify any witnesses for Shrewsbury to interview prior to the hearing. DePauw is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 42 of the Complaint and therefore denies the same.**

43. On or after December 8, 2014, and throughout the investigation and hearing, J.B. was provided the services of Sarah Ryan, the Director of the Women's Center and the Sexual Assault Survivor's Advocate (SASA) program on campus. Ryan is believed to have had extensive training in campus sexual assault and substantial experience in serving as an advisor/advocate to complainants.

**ANSWER: DePauw admits that Sarah Ryan is the Director of the Women's Center and the Sexual Assault Survivor's Advocate program at DePauw, and that she has received training in sexual assault matters. DePauw denies that it chose Ryan for J.B. as implied from the allegations in Paragraph 43 of the Complaint.**

44. Ryan served as J.B.'s advisor/advocate at the hearing and assisted her in preparing her own testimony and for questioning witnesses.

**ANSWER: DePauw admits that Ryan served as J.B.'s advisor at the hearing and is without information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 44 of the Complaint and therefore denies the same.**

45. King's advisor/advocate was the Director of Institutional Research at DePauw and had no training or experience in these types of cases. He was unable to provide any valuable assistance to King to prepare for the hearing or to question witnesses throughout the hearing.

**ANSWER: DePauw admits that King's advisor/advocate was the Director of Institutional Research at DePauw, states that King was allowed to select an advisor of his choice, and rejected the suggestion that he work with J.C. Lopez, a trained member of DePauw's Sexual Assault Board. DePauw is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 45 of the Complaint and therefore denies the same.**

46. The Title IX Coordinator, who is Ryan's spouse, was biased against King because of his sex and pre-judged the case before completing the investigation or conducting a hearing.

**ANSWER: DePauw admits that Dorian Shager is married to Sarah Ryan, and denies the remaining allegations contained in Paragraph 46 of the Complaint.**

47. Other DePauw employees who were vital to the process, including, but not limited to, Julia Sutherlin, Myrna Hernandez, Greg Dillon, Cara Setchell, Charlene Shrewsbury, Sarah Ryan and Cindy Babington were all very closely related in their roles at DePauw and were biased against King from the beginning of the investigation and through the hearing and appeal process.

**ANSWER: DePauw denies the allegations contained in Paragraph 47 of the Complaint.**

48. The Board did not follow its own policies and procedures, including, but not limited to, not allowing King to submit an impact statement prior to issuing a sanction.

**ANSWER: DePauw denies the allegations contained in Paragraph 48 of the Complaint.**

49. The Board was biased in its selection, ordering, and questioning of witnesses at the hearing.

**ANSWER: DePauw denies the allegations contained in Paragraph 49 of the Complaint.**

50. The Board accepted the testimony of J.B. and her witnesses regarding her level of intoxication. There were inconsistencies in their statements. The testimony was unreliable because of witness memory gaps as a result of their own intoxication on December 6, 2013. The passage of time and the opportunity for witnesses to discuss the facts with J.B. in the weeks following also had an impact on witness statements.

**ANSWER: DePauw denies the allegations contained in Paragraph 50 of the Complaint.**

51. The Board disregarded the testimony of J.B.'s roommate and sorority sister, E.C. E.C. testified that she had seen J.B much more intoxicated on previous occasions, and she rated J.B.'s level of intoxication as only a four on a scale of one to ten.

**ANSWER: DePauw denies the allegations contained in Paragraph 51 of the Complaint.**

52. E.C. was also the last person to have contact with J.B. prior to the sexual encounter. E.C. called J.B. while she was in King's room to see if she wanted to leave the party. E.C. testified that it was a normal conversation, and she did not hear any obvious signs of intoxication in J.B.'s voice. J.B. repeatedly told E.C. that she was fine and wanted to stay at the fraternity house.

**ANSWER: DePauw admits that E.C. had contact with J.B., states that J.B.'s testimony speaks for itself, and is without sufficient information to admit or deny the remaining allegations in Paragraph 52 of the Complaint and therefore denies the same.**

53. King did not receive a fair and complete hearing.

**ANSWER: DePauw denies the allegations contained in Paragraph 53 of the Complaint.**

54. The climate on campus at the time of King's hearing made it impossible for him to receive a fair and impartial hearing. In the days leading up to the hearing, there were numerous articles and letters published in the school newspaper regarding another student's experience being raped and there was a strong reaction from the student body.

**ANSWER: DePauw denies the allegations contained in Paragraph 54 of the Complaint.**

55. After the hearing, a witness admitted that J.B. had stated that this case was "bigger than us" and that it was about the larger issues of campus sexual violence instead of a question of what occurred between King and J.B. on the night in question.

**ANSWER: DePauw is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 55 of the Complaint and therefore denies the same.**

56. Following the hearing, the Board deliberated in private and then called the parties back into the hearing room. The Board announced that it found King responsible for non-consensual sexual contact and sexual harassment. It issued a sanction of expulsion.

**ANSWER: DePauw admits the allegations contained in Paragraph 56 of the Complaint.**

57.     On February 24, 2014, the Board issued "Supplemental board notes" explaining its rationale for its finding and expulsion. The Board found that expulsion was necessary because King had engaged in "opportunistic behavior" and "targeted" J.B. The Board also found that King had failed to show any remorse for his actions.

**ANSWER:     DePauw admits that the Board issued Supplemental Notes, states that those notes speak for themselves, and denies the remaining allegations contained in Paragraph 57 of the Complaint.**

58.     There was no evidence presented at the hearing to support these findings, especially considering that no witness had even seen King and J.B. together prior to the sexual acts.

**ANSWER:     DePauw denies the allegations contained in Paragraph 58 of the Complaint.**

59.     King appealed the sanction. His attorney requested an extension of the 72-hour appeal time in order to prepare the appeal. His attorney explained that he was going to be out of state the following week and needed time to prepare the appeal. DePauw granted King a one-week extension to February 7 to file the appeal.

**ANSWER:     DePauw admits the allegations contained in Paragraph 59 of the Complaint.**

60.     On February 5, King's attorney requested an additional extension of time because he would be out of state on February 6-7, and he needed additional time to complete the appeal. He explained in his request that King would be prejudiced if DePauw did not allow additional time.

**ANSWER: DePauw admits that King's attorney requested an additional extension of time on February 5, 2014, representing that King would be prejudiced if the requested extension was denied. DePauw is without sufficient information to form a belief as to the truth of the remaining allegations contained in Paragraph 60 of the Complaint and therefore denies the same.**

61.     DePauw denied the request for an extension of time to complete the appeal.

**ANSWER:   DePauw admits that it extended the time to complete the appeal for one week and that it denied a request for a second extension as alleged in Paragraph 61 of the Complaint.**

62.     King timely submitted his appeal and exhibits.

**ANSWER:   DePauw admits the allegations contained in Paragraph 62 of the Complaint.**

63.     After the appeal was submitted, Cindy Babington, Vice President for Student Life, conducted her own very limited investigation without notice. It is believed that she did not speak with many of the witnesses that were known and never interviewed in the initial investigation.

**ANSWER:   DePauw admits that Cindy Babington reviewed in detail all items submitted by King in his appeal, that she talked to two students in addition to reviewing the materials submitted by King, and denies the remaining allegations contained in Paragraph 63 of the Complaint.**

64.     Babington denied King's appeal and upheld the finding of responsibility. She reduced the sanction from expulsion to suspension for the spring 2014 and fall 2014 semesters. She stated that King would need to reapply for admission, and that, in considering his

readmission, she would evaluate what King had done to "address the issues which caused" his separation from DePauw.

**ANSWER: DePauw admits the allegations contained in Paragraph 64 of the Complaint.**

65. The one-year suspension with conditional readmission is essentially equal to the expulsion sanction in practice and in its impact on King's future. A two-semester suspension of a senior with only two semesters remaining is essentially an expulsion.

**ANSWER: DePauw denies the allegations contained in Paragraph 65 of the Complaint.**

<u>COUNT I</u>
<u>VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972</u>
<u>ERRONEOUS OUTCOME</u>

66. King incorporates by reference and re-alleges paragraphs 1-65 of his Complaint.

**ANSWER: DePauw incorporates by references its answers to Paragraphs 1-65 above as if fully set forth here for its Answer to Paragraph 66 of the Complaint.**

67. Title IX of the Education Amendments of 1972 states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be deprived the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

**ANSWER: Paragraph 67 of the Complaint does not state any factual allegations which require a response. To the extent a response is required; DePauw admits that Title IX of the Education Amendments of 1972 speaks for itself.**

68. DePauw received federal financial assistance and is thus subject to Title IX.

**ANSWER: DePauw admits that it receives federal financial assistance. The remaining allegations contained in Paragraph 68 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, DePauw is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 68 of the Complaint and therefore denies the same.**

69. In virtually all cases of campus sexual misconduct, the accused student is male and the accusing student is female.

**ANSWER: DePauw admits the allegations contained in Paragraph 69 of the Complaint as to its experience.**

70. DePauw has created a campus environment in which King, an accused male student, was excluded from participating in and denied the benefits of an education at DePauw and discriminated against because of his sex.

**ANSWER: DePauw denies the allegations contained in Paragraph 70 of the Complaint.**

71. DePauw's investigation, hearing, and appeals process was conducted in a manner that was biased against the male student, King, and causing the male student to be unjustly deprived of educational opportunities on the basis of his sex.

**ANSWER: DePauw denies the allegations contained in Paragraph 71 of the Complaint.**

72. DePauw's flawed and biased investigation, hearing and appeals process disproportionately affects male students as a result of a higher incidence of female complainants of sexual misconduct against male students.

**ANSWER: DePauw denies the allegations contained in Paragraph 72 of the Complaint.**

73.     As a direct result of its discriminatory practices, King was denied a fundamentally fair investigation and hearing, and DePauw reached an erroneous outcome in its finding against King.

**ANSWER: DePauw denies the allegations contained in Paragraph 73 of the Complaint.**

74.     As a result of DePauw's discrimination, King is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses and costs.

**ANSWER: DePauw denies the allegations contained in Paragraph 74 of the Complaint.**

<u>COUNT II</u>
<u>VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972</u>
<u>DELIBERATE INDIFFERENCE</u>

75.     King incorporates by reference and re-alleges paragraphs 1-74 of his Complaint.

**ANSWER: DePauw incorporates by reference its answers to Paragraphs 1-74 above as if fully set forth here for its Answer to Paragraph 75 of the Complaint.**

76.     DePauw had actual notice of the irresponsible, improper, and sexually biased manner in which the allegations against King were investigated and adjudicated.

**ANSWER: DePauw denies the allegations contained in Paragraph 76 of the Complaint.**

77.     Despite notice of the failures of its investigation and adjudicative process, DePauw and its employees failed to correct the deficiencies in the investigation and process and

were deliberately indifferent to the known failings of its employees responsible for those processes.

**ANSWER: DePauw denies the allegations contained in Paragraph 77 of the Complaint.**

78.     DePauw's deliberate indifference was motivated by King's gender.

**ANSWER: DePauw denies the allegations contained in Paragraph 78 of the Complaint.**

79.     DePauw sanctioned, tolerated, and endorsed procedures and policies which deprived King, a male student, of rights and privileges provided to female students.

**ANSWER: DePauw denies the allegations contained in Paragraph 79 of the Complaint.**

80.     As a result of DePauw's discrimination, King is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses and costs.

**ANSWER: DePauw denies the allegations contained in Paragraph 80 of the Complaint.**

<u>**COUNT III**</u>
<u>**NEGLIGENCE**</u>
<u>**(STATE LAW CLAIM)**</u>

81.     King incorporates by reference and re-alleges paragraphs 1-80 of his Complaint.

**ANSWER: DePauw incorporates by reference its answers to Paragraphs 1-80 above as if fully set forth here for its Answer to Paragraph 81 of the Complaint.**

82.     DePauw assumed a duty to comply with its own rules and regulations and to use reasonable care in conducting its investigation.

**ANSWER: Paragraph 82 of the Complaint does not state any factual allegations which require a response. To the extent a response is required, DePauw denies the allegations contained in Paragraph 82 of the Complaint.**

83.     DePauw had a duty to not deprive a student of educational opportunities on an impermissible basis and without cause.

**ANSWER: Paragraph 83 of the Complaint does not state any factual allegations which require a response. To the extent a response is required, DePauw denies the allegations contained in Paragraph 83 of the Complaint.**

84.     DePauw was negligent in enforcing its own policies and procedures.

**ANSWER: DePauw denies the allegations contained in Paragraph 84 of the Complaint.**

85.     As a result of DePauw's negligence, King is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses and costs.

**ANSWER: DePauw denies the allegations contained in Paragraph 85 of the Complaint.**

<u>**COUNT IV**</u>
<u>**BREACH OF CONTRACT**</u>
<u>**(STATE LAW CLAIM)**</u>

86.     King incorporates by reference and re-alleges paragraph 1-85 of his Complaint.

**ANSWER: DePauw incorporates by references its answers to Paragraphs 1-85 above as if fully set forth here for its Answer to Paragraph 86 of the Complaint.**

87.     Indiana law imposes an implied contract on the relationship between students and universities.

**ANSWER: Paragraph 87 of the Complaint does not state any factual allegations which require a response. To the extent a response is required, DePauw denies the allegations contained in Paragraph 87 of the Complaint.**

88. The catalogues, bulletins, circulars, and regulations of a university made available to the matriculant become a part of the contract.

**ANSWER: Paragraph 88 of the Complaint does not state any factual allegations which require a response. To the extent a response is required, DePauw denies the allegations contained in Paragraph 88 of the Complaint.**

89. DePauw gives certain "Rights of the Respondent" to students accused of sexual misconduct, which includes rights "to have adequate notice of and time to prepare" for a hearing and "to have complaints responded to promptly and sensitively, investigated appropriately and addressed competently."

**ANSWER: DePauw admits that it gives students who are respondents in its Community Standards Process a document describing the rights of respondents, states that the document speaks for itself, and otherwise denies the remaining allegations contained in Paragraph 89 of the Complaint.**

90. DePauw provided a handout to King explaining the sexual misconduct procedures and explaining his rights. As a part of that handout, it stated: "If the respondent is found responsible, the Board will review the respondent's written impact statement and decide upon a sanction."

**ANSWER: DePauw admits that it provided a handout to King, states that the handout speaks for itself, and states that the handout given to King contained a typographical error, indicating that the "respondent" would be able to submit a written**

**impact statement. This statement was incorrect and conflicted with other statements describing the disciplinary process stating that the complainant, rather than the respondent, is able to submit an impact statement.**

91. DePauw breached its contract with King when it failed to comply with its own policies and procedures and the handout distributed to King when he was charged with sexual misconduct.

**ANSWER: DePauw denies the allegations contained in Paragraph 91 of the Complaint.**

92. DePauw acted illegally, arbitrarily, capriciously, and in bad faith when it failed to promptly, thoroughly, competently, and impartially investigate and process the false allegation of sexual misconduct filed against him.

**ANSWER: DePauw denies the allegations contained in Paragraph 92 of the Complaint.**

93. DePauw continued to act illegally, arbitrarily, capriciously, and in bad faith it condoned and supported the discriminatory investigation and hearing by affirming the hearing Board's decision on appeal.

**ANSWER: DePauw denies the allegations contained in Paragraph 93 of the Complaint.**

94. King has been substantially damaged by DePauw's breach of contract, and King seeks any and all damages available to him under Indiana law.

**ANSWER: DePauw denies the allegations contained in Paragraph 94 of the Complaint.**

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (STATE LAW CLAIM)

95.     King incorporates by reference and re-alleges paragraphs 1-94 of his Complaint.

**ANSWER:   DePauw incorporates by references its answers to Paragraphs 1-94 above as if fully set forth here for its Answer to Paragraph 95 of the Complaint.**

96.     As described in the foregoing paragraphs, DePauw engaged in extreme and outrageous conduct and thereby intentionally and/or recklessly caused severe emotional distress to King.

**ANSWER:   DePauw denies the allegations contained in Paragraph 96 of the Complaint.**

97.     King has suffered serious emotional distress by DePauw's extreme and outrageous conduct, and King seeks any and all damages available to him under Indiana law.

**ANSWER:   DePauw denies the allegations contained in Paragraph 97 of the Complaint.**

## COUNT VI
## PROMISSORY ESTOPPEL
## (STATE LAW CLAIM)

98.     King incorporates by reference and re-alleges paragraphs 1-97 of his Complaint.

**ANSWER:   DePauw incorporates by references its answers to Paragraphs 1-97 above as if fully set forth here for its Answer to Paragraph 98 of the Complaint.**

99.     DePauw's regulations, standards, policies and procedures constitute representations and promises that DePauw should have reasonably expected to induce King's reliance and forbearance.

**ANSWER: Paragraph 99 of the Complaint does not state any factual allegations which require a response. To the extent a response is required, DePauw denies the allegations contained in Paragraph 99 of the Complaint.**

100. At the time of his transfer to DePauw, King was a full-time student and athlete at Indiana State University, and he was receiving athletic and academic scholarships.

**ANSWER: DePauw is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 100 of the Complaint and therefore denies the same.**

101. King relied upon the express and implied promises of DePauw that he would not be subject to discrimination on campus, and he would not be denied his procedural rights should he be accused of a violation of DePauw's sexual misconduct policies.

**ANSWER: DePauw is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 101 of the Complaint and therefore denies the same.**

102. In relying on DePauw's promises, King gave up his scholarships and invested a substantial amount of money into his education at DePauw.

**ANSWER: DePauw denies the allegations contained in Paragraph 102 of the Complaint.**

103. King would not have given up his Indiana State University scholarships and opportunity to play football or continued to invest substantial financial resources into his education at DePauw absent DePauw's promises and representations.

**ANSWER: DePauw is without sufficient information to form a belief as to the truth of the allegations contained in Paragraph 103 of the Complaint and therefore denies the same.**

104.    As a direct and proximate result of DePauw's promises and representations and its failure to fulfill those promises and representations, King has suffered substantial damages and requests any and all damages available under Indiana law.

**ANSWER: DePauw denies the allegations contained in Paragraph 104 of the Complaint.**

**COUNT VII**
**DEFAMATION *PER SE***
**(STATE LAW CLAIM)**

105.    King incorporates by reference and re-alleges paragraphs 1-104 of his Complaint.

**ANSWER: DePauw incorporates by references its answers to Paragraphs 1-104 above as if fully set forth here for its Answer to Paragraph 105 of the Complaint.**

106.    DePauw employees and representatives have maliciously made statements indicating that King has committed criminal conduct and/or sexual misconduct.

**ANSWER: DePauw denies the allegations contained in Paragraph 106 of the Complaint.**

107.    As a result of these false and misleading statements, King has suffered harm including but not limited to irreparable damage to his reputation, and King seeks any and all damages available to him under Indiana law.

**ANSWER: DePauw denies the allegations contained in Paragraph 107 of the Complaint.**

WHEREFORE, Defendant, DePauw University, prays that Plaintiff take nothing by his Complaint, that the Court enter judgment in favor of DePauw University, that the costs of this action be assessed against Plaintiff, and that DePauw University be awarded all other just and appropriate relief.

## AFFIRMATIVE AND OTHER DEFENSES

1.      Counts I, II, III, V, and VII of King's Complaint fail to state a claim upon which relief may be granted.

2.      To the extent King seeks equitable relief, his claims are barred due to his unclean hands and other inequitable conduct.

3.      King has waived and/or is estopped from asserting the claims set forth in the Complaint.

4.      King's claim for defamation fails because the allegedly defamatory statements are protected by the common interest privilege.

5.      King's claim for defamation fails because the allegedly defamatory statements were not made without a legitimate business purpose.

6.      To the extent, if any, that King has an adequate remedy at law, his Complaint for injunctive relief is barred.

7.      In resolving the disciplinary charge against King, DePauw followed the procedures outlined in its Student Handbook and acted in good faith and on reasonable grounds.

8.      The disciplinary procedure followed by DePauw was conducted with basic fairness, and King's sanction was consistent with the provisions of the Student Handbook, Title IX, and reasonable expectations of DePauw students and the greater community at DePauw.

9.      DePauw reserves the right to add additional defenses as may be revealed during the course of discovery.

WHEREFORE, Defendant, DePauw University, prays that Plaintiff take nothing by his Complaint, that the Court enter judgment in favor of DePauw University, that the costs of this action be assessed against Plaintiff, and that DePauw University be awarded all other just and appropriate relief.

Respectfully submitted,

*/s/  Brian W. Welch*
Brian W. Welch [1556-49]
Margaret M. Christensen [27061-49]
BINGHAM GREENEBAUM DOLL LLP
2700 Market Tower
10 West Market Street
Indianapolis, Indiana  46204
Telephone: 317.635.8900
Fax: 317.236.9907
Email: bwelch@bgdlegal.com
          mchristensen@bgdlegal.com

*Attorneys for Defendant, DePauw University*

## CERTIFICATE OF SERVICE

I certify that on May 8, 2014, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

William W. Drummy
Holly A. Reedy
WILKINSON, GOELLER, MODESITT,
WILKINSON & DRUMMY, LLP
333 Ohio Street
Terre Haute, IN 47807
wwdrummy@wilkinsonlaw.com
hareedy@wilkinsonlaw.com
*Attorneys for Benjamin King*

*/s/  Brian W. Welch*
Attorney for DePauw University

15246135.3