UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BENJAMIN KING, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 2:14-cv-0070-WTL-DKL |
| DEPAUW UNIVERSITY, | ) ) ) |
| Defendant. | ) |

**BRIEF IN SUPPORT OF VERIFIED MOTION FOR PRELIMINARY INJUNCTION**

The Plaintiff, Benjamin King ("King"), by counsel, files this Brief in Support of Verified Motion for Preliminary Injunction, requesting the Court to issue an immediate preliminary injunction enjoining the Defendant, DePauw University ("DePauw") from preventing King from enrolling in the fall academic semester at DePauw and completing his senior year.

**INTRODUCTION**

King filed a Complaint against DePauw based on DePauw's violation of Title IX of the Education Amendments of 1972 and state law. King alleges that DePauw discriminated against him based on his sex in its investigation, hearing, and appeal of a false allegation of sexual misconduct. King also filed related state law claims, including an implied contract claim, which is relevant to this motion.

King filed his first motion for immediate preliminary injunction on March 17, 2014. DePauw and King entered into an Agreed Order on the preliminary injunction, filed on March 27, 2014. The agreed preliminary injunction allowed King to complete the spring semester with restrictions placed on his presence on campus. King complied with all requirements of the agreed preliminary injunction and successfully completed the spring semester without incident.

1

The agreed preliminary injunction expired at the conclusion of DePauw's spring semester, on May 15, 2014.

Negotiations between King and DePauw regarding the 2014-2015 school year commencing in August 2014 have failed. King is filing this motion and requesting the Court Order DePauw to allow him to enroll in the fall semester without restrictions. The alleged victim, J.B., has graduated from DePauw and is no longer living on campus. Therefore, DePauw's prior concerns that King's presence on campus would be detrimental to J.B. are no longer valid.

## STATEMENT OF FACTS

This case arises from a false allegation of sexual misconduct made by a DePauw student, J.B., against King. King incorporates paragraphs one to 65 of his Complaint to provide additional factual background.

On December 6, 2013, King's fraternity hosted a party attended by a large number of students who were consuming alcohol. King had consumed the equivalent of approximately eleven shots of liquor. King invited another student, J.B., to his room toward the end of the party. J.B. had also consumed alcohol, and King's perception was that they were equally intoxicated. J.B. and King engaged in normal conversation, and King did not believe she was extremely intoxicated to the point of incapacitation. King and J.B. began to engage in sexual activity, with each of them actively participating. J.B. undressed herself and equally participated in the sexual activity. King and J.B. ultimately did not have intercourse, and J.B. spent the night in his room.

The following evening, J.B. went to Putnam County Hospital for a medical examination for sexual assault. The results of the examination did not show the presence of a date-rape drug

or evidence of rape. She reported the false allegation of sexual assault to DePauw representatives on December 8, 2013.

DePauw's Title IX Coordinator interviewed King on December 18, 2013, but no other actions were taken and no investigation was conducted. On January 22, 2014, J.B. decided that she wanted to pursue sexual misconduct charges against King. King was officially charged with non-consensual sexual misconduct and sexual harassment on February 12, 2014, and the Sexual Misconduct Hearing Board ("the Board") held an evidentiary hearing on February 24, 2014.

The Board immediately deliberated following the hearing, and then called King and J.B. back into the hearing room. The Board announced that it found King responsible for non-consensual sexual misconduct and sexual harassment, and it issued the sanction of expulsion.

King appealed the Board's decision. (*Appeal of Benjamin King, attached Exhibit A*).[1] King's lengthy appeal pointed out numerous procedural errors in the investigation and hearing and explained that the DePauw representatives involved were biased against King. DePauw's Vice President of Student Life, Cindy Babington, reviewed the appeal and upheld the finding of responsibility. Babington reduced the expulsion sanction to a suspension for spring 2014 semester and the fall 2014 semester, with the requirement that King reapply for readmission at the end of the suspension and be able to show how he has corrected the issue that led to his suspension.

King's appeal put Babington on notice that DePauw had discriminated against King based on his sex by failing to provide a prompt, thorough, or impartial investigation and hearing.

---

[1] All citations to exhibits throughout this brief shall refer to the exhibits attached to King's first Verified Motion for Preliminary Injunction, filed as document 7 on the docket for this matter.

3

DePauw had also breached its implied contract with King by failing to comply with its own policies and procedures.

For example, DePauw did not interview any witnesses or investigate the claim until *eight weeks* after the alleged incident. DePauw's public safety officer responsible for the investigation, Captain Charlene Shrewsbury, admitted at the hearing that she only interviewed the witnesses that J.B. remembered her having the most contact with. J.B. emailed Shrewsbury a list of witnesses to interview, which only included her sorority sisters, and Shrewsbury did not bother interviewing anyone else. Shrewsbury passed on the opportunity to interview between twelve and thirty witnesses that may have had important knowledge of the night in question and the level of intoxication of *both* J.B. and King. Shrewsbury's complete reliance on J.B. to select the witnesses was especially troubling, given that the Board found that J.B. was too intoxicated to consent to sexual activity, and J.B. claimed to have no memory of large portions of the evening.

Shrewsbury also did not follow up on redacted portions of J.B.'s medical records or speak with a medical professional to determine the significance of information contained in her medical records. Shrewsbury did not request text messages from J.B., even though J.B. relied on those text messages to allege that King's behavior was predatory.

The Board's handling of this case was also biased against King. The Board refused to allow King to have a one week extension of time to prepare for the hearing, even though the Title IX Coordinator had promised King such time. J.B. was provided an advocate/advisor (who happened to be the Title IX Coordinator's wife) who was highly trained in campus sexual assault cases. King, on the other hand, was permitted to select his own advisor and ended up with a DePauw employee with absolutely no training in Title IX or campus sexual assault issues.

Although King was permitted to select his own DePauw representative to advise him, DePauw should have ensured that King had someone trained and qualified to assist him.

King pointed out in his appeal that all DePauw representatives involved in the process, including the Title IX Coordinator, J.B.'s advocate, and the Board members, were connected through their employment positions and many of them also had social connections. The Board's pre-judgment of King's case was evident by reviewing the audio recording of the hearing.

The Board immediately began the hearing by questioning Shrewsbury and attempting to discredit the testimony of King and the only live witness supporting his case, J.B.'s roommate, E.C. E.C. had testified in writing and to the Board that J.B.'s level of intoxication was only a four on a scale of one to ten, and that she had seen her much more intoxicated on previous occasions. She also testified that she spoke to J.B. on the telephone at the end of party (which happened to be when J.B. was already in King's room), and that it was a normal conversation. Nothing in J.B.'s speech indicated that she was highly intoxicated, and J.B. repeatedly stated that she wanted to stay at the party.

Despite this testimony, the Board was focused on discrediting E.C. for a minor inconsistency in her statement. However, the Board did not attempt to discredit J.B., even though J.B. had numerous inconsistencies in her testimony and provided three separate stories on the amount of alcohol she had consumed. The Board also relied on the testimony of J.B.'s other sorority sisters, who were also intoxicated that evening, to conclude that J.B. was too intoxicated to consent to sexual activity. Surprisingly, the Board or Shrewsbury did not question a single witness, with the exception of King, regarding King's level of intoxication.

Despite being put on notice that DePauw had failed to follow its own policies and procedures and the federal civil rights act, Babington affirmed the finding against King. (*March*

*13, 2014, Letter from Cindy Babington to Benjamin King, attached as Exhibit B*). The reduced sanction has the same implications and impact on King's future as the original sanction of expulsion.

Fourteen weeks passed from the date of the alleged sexual misconduct to the date DePauw suspended King and ordered him to leave campus. Throughout those fourteen weeks, DePauw did not restrict King's presence on campus or take any action to "protect" other students from any threat that King would pose on campus. DePauw also delayed eight weeks in even investigating the alleged sexual misconduct. If DePauw representatives felt that King was a danger to its students, they would have taken immediate action to implement an interim suspension or otherwise restrict King's movement on campus. However, King was not ordered to leave campus until fourteen weeks after the alleged incident. Further, in recent settlement negotiations, DePauw has recently acknowledged that it would be agreeable to allowing King to return to campus, full-time and unrestricted, in the spring of 2015.[2]

King has already been damaged by DePauw's sex discrimination and breach of its implied contract with King. If DePauw is permitted to wrongfully prevent King from enrolling in the fall 2014 semester, he will suffer irreparable harm.

---

[2] King acknowledges that offers to compromise are not admissible for purposes of proving the validity or amount of a disputed claim. Fed. R. Evid. 408(a). King is not offering this information for purposes of proving that DePauw violated federal or state law in its mishandling of the false allegation of sexual misconduct made against him, and he is not offering this information for purposes of calculating damages. King is offering this information only for purposes of this preliminary injunction and DePauw's intent and bias in continuing to exclude King from campus.

## LEGAL ANALYSIS AND ARGUMENT

King requests the Court enjoin DePauw from preventing him from enrolling in the fall 2014 and spring 2015 semesters pending the resolution of his federal complaint based on sex discrimination and state law claims. Injunctive relief is appropriate because King will suffer irreparable damages if he is wrongfully suspended from DePauw, and DePauw will not be harmed by the injunction.

In *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006), the court stated the factors for a preliminary injunction and the district court's consideration of those factors:

> To win a preliminary injunction, a party must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest. *Joelner v. Vill. of Wash. Park,* 378 F.3d 613, 619 (7th Cir.2004). If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis, *id.*, which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied.

The requirements for a temporary restraining order are the same as for a preliminary injunction. *Annex Books, Inc. v. City of Indianapolis*, 673 F.Supp.2d 750, 753 (S.D. Ind. 2009). The process of analyzing these factors "involves engaging in what is called the 'sliding scale' approach." *Id.* "The sliding scale approach 'is not mathematical in nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" *Id.* (*quoting Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895–96 (7th Cir.2001)). In analyzing these factors, the balance of the factors weighs in favor of granting the preliminary injunction and allowing King to complete his final year at DePauw.

1.     **It is reasonably likely that King's federal and state law claims against DePauw will be successful on the merits.**

It is likely that King will prevail on his federal and state law claims against DePauw. The likelihood of success on the merits on King's Title IX claims and state law implied contract claim are apparent on the basis of the records of the investigation, hearing, and appeal.

"Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2nd Cir. 1993). In *Yusuf*, the court stated that "plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Id*. Title IX claims filed against Xavier University with similar facts recently survived a motion to dismiss for failure to state a claim. *Wells v. Xavier University*, No 1:13-CV-00575, 2014 WL 972172, at *9 (S.D. Ohio March 11, 2014).[3]

The facts alleged in the complaint and stated to DePauw in King's administrative appeal show that gender was a motivating factor in the decision to discipline. DePauw conducted an untimely investigation that allowed witnesses' memories to fade and allowed J.B. to discuss the witnesses' testimony with them (which, in fact, at least one witness admitted to). After an unreasonable delay, DePauw finally initiated the investigation but only interviewed witnesses selected by J.B., despite having direct knowledge of numerous other witnesses who were present at the party.

In attempting to obtain King's side of the story, DePauw treated King as if he were a criminal and took actions and made statements that strongly discouraged him from discussing what happened. Vice President Babington then later criticized King for not participating in the

---

[3] This case was subsequently dismissed following an out-of-court settlement between the parties.

investigation. He was denied a short, one-week request for an extension of time to prepare for the hearing, and his attorneys were later denied an additional request for an extension of time on the appeal. Both denials were without justification and served as additional evidence of the Board's discrimination against King.

The audio recordings of the hearing show that the Board had pre-judged the case and was merely considering evidence that would support the female complainant's story and that would find the male accused student guilty. The ordering of witnesses and questioning of witnesses revealed that DePauw was not trying to find the truth – it was trying to find a basis to vindicate the allegation of sexual assault against the male student. It is anticipated that the evidence will show that the environment on campus was such that an accused male student could not receive a fair and impartial investigation and hearing.

King is also likely to succeed on his Title IX deliberate indifference claim. The deliberate indifference standard requires plaintiffs to prove "that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Doe v. University of the South*, 687 F.Supp.2d 744, 757 (E.D. Tenn. 2009). The deliberate indifference standard is met where "the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.*

Vice President Babington was put on notice by King's extensive appeal and exhibits that DePauw had failed to provide a prompt, thorough, and impartial investigation. She was specifically informed that DePauw had violated Title IX and state law, and that King was discriminated against in the investigation and hearing of his claim. Babington had an opportunity to cure the sex discrimination and yet chose not to do so. Babington was deliberately indifferent to the discrimination and actively participated in discriminating against

King. It is also believed that evidence will show that the President of DePauw was informed by outside sources that the evidence against King was minimal; however, the President chose to not intervene to stop the sex discrimination against King.

King also has a high probability of success on the merits of his state law breach of contract claim. In Indiana, the legal relationship between a student and a university is one of an implied contract. *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013). "It is generally well accepted that the catalogues, bulletins, circulars, and regulations of a university made available to the matriculant become a part of the contract." *Id.* In analyzing the contract between the university and student, "the sole function of the courts is to determine whether the educational institution acted illegally, arbitrarily, capriciously, and in bad faith." *Id.*

DePauw gives certain "Rights of the Respondent" to students accused of sexual misconduct, which includes rights "to have adequate notice of and time to prepare" for a hearing and "to have complaints responded to promptly and sensitively, investigated appropriately and addressed competently." (*Exhibit A,* see Exhibit B to King's appeal). King was also informed in writing that he would have the opportunity to submit an impact statement prior to sanctioning, if the Board found him responsible for the charges. (*Exhibit A,* pg 2).

As stated in the Complaint, this brief, and in King's administrative appeal, DePauw wholly failed to respond promptly and sensitively, investigate appropriately, or competently address J.B.'s complaint against King. The complaint was processed and investigated in an untimely, insufficient, and improper manner, and addressed by a Board that was incompetent at questioning witnesses and examining evidence. The Board refused to allow King to submit an impact statement, and then the Board and Babington held it against King that such a statement

was not provided. DePauw's breach of its implied contract with King has caused King to suffer serious and substantial damages.

### 2. King will suffer irreparable harm that outweighs any potential harm to DePauw.

King will suffer irreparable harm if he is prevented from completing his senior year at DePauw. King has only one academic year remaining to complete his undergraduate degree at DePauw. King was "red-shirted" for football his first year at Indiana State University, and he was on an academic plan to complete four full years at DePauw. Therefore, King is already scheduled to complete five years of college to obtain his bachelor's degree.

If DePauw is permitted to exclude King from the 2014-2015 school year, King will face numerous risks, including not being able to transfer to another university for the school year, not having all of his educational credits transfer, having to repeat courses, and losing even more time in his academic career. King will also be deprived of the prestige and honor of a DePauw degree. King has put in the time and financial commitment to obtaining a DePauw degree, and his time and financial investment will not be recognized if he is unable to receive such a degree.

There is very little, if any, potential harm to DePauw. The alleged victim of sexual assault, J.B., graduated from DePauw in May 2014 and now is believed to reside in Tennessee. Therefore, there is no longer a concern for the impact on J.B., which necessitated the restrictions for the spring 2014 preliminary injunction. The only potential harm would be if King was a threat to the safety of other DePauw students. As discussed above, DePauw allowed King to remain on campus for fourteen weeks after the date of the alleged sexual misconduct. DePauw had remedies available to it on an interim basis to protect students if it thought King was a risk on campus, including suspension. However, it did not take such action.

Perhaps the reason DePauw did not take action was because of the nature of the alleged sexual misconduct. King testified to the Sexual Misconduct Board that J.B. actively participated in the sexual activity. She removed her own clothing, engaged in sexual activities with King, and asked him to have sexual intercourse with her. This testimony was never disputed by any witnesses. It was never alleged that King forcefully coerced J.B. or that J.B. was unconscious during the sexual activity. Rather, the Board found that King should have known that J.B. was too intoxicated to consent to sexual activity. This finding was based on contradictory testimony regarding J.B.'s level of intoxication.

King is not a sexual predator and does not pose a risk to DePauw students. DePauw has shown that it would consider allowing King to return to campus on a full-time, unrestricted basis in the spring 2015, if King agreed to dismiss this lawsuit. That admission should be considered proof that the potential harm to King is greatly outweighed by any possible harm to DePauw. Any potential harm that could be argued by DePauw for King's unrestricted admission in the fall 2014 would not somehow be removed in the spring 2015.

King further emphasizes his request for *unrestricted* admission to DePauw for the 2014-2015 academic year. The restrictions imposed on King for the spring semester were substantial. King was required to commute from Terre Haute to Greencastle each day for class and was required to leave campus between classes. All DePauw students are required to live on campus, so King was disconnected from his classmates and unable to be a part of the DePauw community in any way. King even had to obtain prior approval from DePauw's counsel before going on campus for out-of-class meetings or group projects. King was ostracized from his classmates and peers and spent his time between classes sitting in a Greencastle fast-food restaurant instead of being able to interact with students on campus or study in campus facilities. King does not

pose a threat to his fellow students and J.B. is no longer on campus. Therefore, King requests the opportunity to complete his senior year without interruption or continued restrictions on his education.

      **3.**     **There is no adequate remedy at law.**

As discussed above, there is no adequate remedy at law that could replace injunctive relief. King will be deprived of his education. This deprivation could interfere with King's ability to transfer to other universities and to be accepted into graduate school. The transfer from DePauw to another institution in the final year of his education will also likely require King to explain his wrongful suspension for sexual misconduct when applying for transfer, graduate school, and future employment. This will be detrimental to King's ability to get into graduate school and possibly obtain future employment.

King will also be deprived of the benefits of obtaining a degree from DePauw. DePauw is a nationally-recognized, respected university. King has invested a substantial amount of financial resources and his time and effort into obtaining a degree from DePauw. If King is forced to transfer to another university (if this is even possible with the current suspension), he will not have the benefits of having a degree from DePauw.

      **4.**     **An injunction allowing King to complete his education will not harm the public interest.**

An injunction allowing King to complete his education would not harm the public interest. The only apparent public interest would be a public safety issue, but, as discussed above, King does not pose a threat to public safety. The public interest should favor not allowing a student to be deprived of his educational opportunities based on his gender and without due process of law.

## CONCLUSION

King respectfully requests the Court enjoin DePauw from suspending him for 2014-2015 school year. King is reasonably likely to prevail on the merits of his Title IX claims and state law implied contract claim. He will suffer irreparable harm if the injunction is not granted and that harm greatly outweighs any possible harm to DePauw. There is no other adequate remedy at law, and granting the injunction will not harm the public interest.

WHEREFORE, the Plaintiff, Benjamin King, by counsel, respectfully requests the Court enjoin the Defendant, DePauw University, from interfering with his education and suspending him for the 2014-2015 school year.

Respectfully Submitted,

/s/ William W. Drummy
William W. Drummy, #4607-84

/s/ Holly A. Reedy
Holly A. Reedy, #27558-84

WILKINSON, GOELLER, MODESITT,
   WILKINSON & DRUMMY, LLP
333 Ohio Street
Terre Haute, IN 47807
Telephone: (812) 232-4311
Fax: (812) 235-5107
Attorneys for Benjamin King

## VERIFICATION

I, Benjamin King, affirm under penalties for perjury that the foregoing statements are true to the best of my knowledge and belief.

7/18/14
Date

Benjamin King

14